UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TARA B.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C21-0332-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1987, has a high school education, and has worked as a barista and receptionist.  AR 1120.  Plaintiff has not been gainfully employed since September 2017.   AR 17.

On November 13, 2018, Plaintiff applied for benefits, alleging disability as of September 1, 2017.[1] AR 223.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 73-74, 143-44.  After the ALJ conducted a hearing on September 1, 2020, the ALJ issued a decision on October 2, 2020, finding Plaintiff not disabled. AR 15-28, 36-71.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.  Subsequently, on June 29, 2021, the Court granted the parties' stipulated motion to remand pursuant to sentence six of 42 U.S.C. § 405(g), and on September 9, 2021, the Appeals Council remanded the case for a de novo hearing before the ALJ because the recording from the prior September 1, 2020 hearing was inaudible and a transcript could not be prepared.  AR 1200.

## THE ALJ'S DECISION

On June 14, 2022, the same ALJ held a second de novo hearing, and utilizing the five-step disability evaluation process,[2] again subsequently issued an unfavorable decision on July 13, 2022, finding:

> **Step one**:  Plaintiff has not engaged in substantial gainful activity since her September 1, 2018, amended onset date.
>
> **Step two**:  Plaintiff has the following severe impairments: Ehlers-Danlos syndrome; postural orthostatic tachycardia syndrome ("POTS"); degenerative disc disease; substance abuse disorder; personality disorder; and depressive disorder.[3]

---

[1] At her September 1, 2020 hearing, Plaintiff amended the onset date to September 1, 2018.  AR 40.

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] Hypermobile Ehlers-Danlos Syndrome ("EDS") is "an inherited connective tissue disorder that is caused by defects in a protein called collagen," and is "generally considered the least severe form of EDS." National Institute of Health, Genetic and Rare Diseases Information Center, *Hypermobile Ehlers-Danlos Syndrome,* https://rarediseases.info.nih.gov/diseases/2081/hypermobile-ehlers-danlos-syndrome (last visited Aug. 1, 2023).  "Common symptoms include joint hypermobility, affecting both large (elbows,

ORDER REVERSING THE COMMISSIONER'S
DECISION - 2

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity**:  Plaintiff can perform light work with additional cognitive, social, and exertional limitations.

**Step four**:  Plaintiff is unable to perform past relevant work as a barista and/or as a receptionist.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including table worker and semiconductor bonder, Plaintiff is not disabled.

AR 1099-1123.

Following the second hearing and decision, on October 31, 2022, the Court granted the parties' stipulated motion to reopen the case.  Dkt. 13,14.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 416.920(a) (citations omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case."  *Id.*

knees) and small (fingers, toes)."  *Id.*  Postural orthostatic tachycardia syndrome or "POTS," by contrast, is a "condition that causes a number of symptoms when [one] transition[s] from lying down to standing up, such as a fast heart rate, dizziness and fatigue."  *Postural Orthostatic Tachycardia Syndrome*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last visited Aug. 1, 2023).

[4] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

1    Substantial evidence is "more than a mere scintilla.  It means - and means only - such

2    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3    *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

4    747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

5    conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*

6    *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

7    as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

8    Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

9    susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

10   must be upheld.  *Id.*

11                                      **DISCUSSION**

12           Plaintiff argues the ALJ erred in assessing the medical opinions regarding her mental and

13   physical impairments; in evaluating her testimony; and in evaluating the lay testimony from her

14   former roommate, G.S.  The Commissioner argues that the ALJ's decision is free of harmful

15   legal error, supported by substantial evidence, and should be affirmed.

16   **A.      The ALJ Erred in Part in Evaluating the Medical Opinions.**

17           **1.      Medical Opinions Regarding Plaintiff's Mental Impairments**

18           Under regulations applicable to this case, the ALJ is required to articulate the

19   persuasiveness of each medical opinion, specifically with respect to whether the opinions are

20   supported and consistent with the record.  *See* 20 C.F.R. § 404.1520c(a)-(c).  An ALJ's

21   consistency and supportability findings must be supported by substantial evidence.  *See Woods v.*

22   *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

1   Plaintiff argues that the ALJ erred in assessing the medical opinions regarding her mental

2   impairments from Drs. Shadrach, Widlan, and Swing. The Court addresses each in turn.

3          a.      *Dr. Shadrach*

4   In support of her December 2019 opinion, Dr. Shadrach reviewed Plaintiff's

5   psychotherapy records, conducted a clinical interview, and administered an MSE and additional

6   cognitive and psychological tests. AR 580-86. She diagnosed major depressive disorder,

7   generalized anxiety disorder, and PTSD, and found that Plaintiff possessed good immediate

8   memory and concentration. AR 584-85. Dr. Shadrach further opined that while Plaintiff

9   possesses "the intellectual ability to manage both simple and complex tasks, to maintain focused

10  attention, to retain and recall new learning, and to understand both simple and abstract

11  instructions," her impaired mental health would undermine her ability to employ those skills

12  reliably in a work setting. AR 585 (noting that Plaintiff's "mental energies would be

13  compromised by her impaired mental health"). Regarding Plaintiff's social skills, Dr. Shadrach

14  opined that Plaintiff was "limited," noting, though, that Plaintiff "would likely interact with

15  others satisfactorily when she is not depressed." AR 585. Dr. Shadrach opined that even part-

16  time work would still "be compromised by [Plaintiff's] poor attendance and lack of motivation."

17  AR 585.

18  In concluding that Dr. Shadrach's opinion was only "partially persuasive," the ALJ found

19  that Dr. Shadrach's statements regarding Plaintiff's memory and concentration and her ability to

20  follow instructions, remember, and interact absent interference from her mental impairments

21  were adequately supported and thus persuasive. AR 1118. By contrast, the ALJ found that Dr.

22  Shadrach's related assessments that Plaintiff was unable to perform reliably in a work setting due

23  to her poor attendance and interference from mental impairment symptoms, and that Plaintiff

1    lacked motivation, were unsupported because they were not based on documented findings or

2    supporting clinical observations.  AR 1117-18.   Instead, the ALJ dismissed the assessments as

3    "conclusory" and based on Plaintiff's self-report.  AR 1117-18.  The ALJ did not specifically

4    address the consistency of Dr. Shadrach's opinion.  AR 1118.

5            Plaintiff argues that the ALJ erred in discounting Dr. Shadrach's opinion based on her

6    self-reporting.  Dkt. 24 at 8 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008)).

7    She contends that it is "well-established that mental health professionals" like Dr. Shadrach

8    "*must* rely on the combination of their [own] observations and reported symptoms," and that "the

9    provider's partial consideration of reported symptoms does not constitute substantial evidence to

10   discount an opinion."  Dkt. 28 at 3.  Plaintiff further contends that Dr. Shadrach in fact supported

11   her conclusions with her own observations.  Dkt. 28 at 3.

12           The Commissioner counters that the *Ryan* case relied on by Plaintiff has been abrogated,

13   and that Plaintiff's subjective complaints do not constitute objective medical evidence or a

14   supporting explanation sufficient to support Dr. Shadrach's opinion.  Dkt. 27 at 8

15            In *Ryan*, the case cited by Plaintiff, the Ninth Circuit held that the ALJ improperly

16   discounted a medical opinion when the ALJ rejected it based on the examining psychiatrist's

17   partial reliance on Plaintiff's self-reports.  *See* 528 F.3d at 1199–2000.  The *Ryan* Court reasoned

18   that "[a]n ALJ does not provide clear and convincing reasons for rejecting an examining

19   physician's opinion by questioning the credibility of the patient's complaints where the doctor

20   does not discredit those complaints and supports his ultimate opinion with his own

21   observations."  *Id.*  The Commissioner here is correct that the "clear and convincing reasons"

22   standard articulated in *Ryan* no longer applies to the Court's evaluation of an ALJ's findings

23   regarding medical opinions post-2017.  However, the Commissioner is mistaken to the extent she

also suggests that *Ryan*'s holding regarding the role of a claimant's self-reports in evaluating

medical opinions has similarly been abrogated.  *See, e.g., Nygren v. Saul*, 854 F. App'x 874, 876

(9th Cir. 2021) (citing *Ryan*, 528 F.3d at 1128, and *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th

Cir. 2017)) (demonstrating *Ryan's* continuing validity in holding that "[t]o the extent that the

ALJ discredited [a psychologist's] opinion because it was based on [the claimant's] self-report,"

it constituted "reversible error [because] in the context of mental health evidence, a clinical

interview and mental health evaluation 'are objective measures and cannot be discounted as a

self-report'").

  Indeed, the ALJ here erred when she discounted Dr. Shadrach's opinion based in part on

Plaintiff's subjective self-reporting, where Dr. Shadrach relied on objective procedures and tests

as well in forming her opinion.  *See Buck*, 869 F.3d at 1049 (noting that psychiatric "[d]iagnoses

will always depend in part on the patient's self-report").  Ninth Circuit precedent is clear that:

> [p]sychiatric evaluations may appear subjective, especially compared to evaluation
> in other medical fields. Diagnoses will always depend in part on the patient's self-
> report, as well as on the clinician's observations of the patient. But such is the nature
> of psychiatry.

*Id.*  "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the

same manner to opinions regarding mental illness."  *Id.*; *cf. Tommasetti v. Astrue*, 533 F.3d 1035,

1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir.

1999)) (holding that an ALJ may reject a physician's opinion "if it is based 'to a large extent' on

a claimant's self-reports that have been properly discounted as incredible").

  Here, in evaluating Plaintiff's testimony, although the ALJ questioned the consistency of

Plaintiff's testimony, the ALJ did not make any affirmative findings that Plaintiff was

malingering or that Plaintiff lacked credibility.  AR 1109-13.  Nor has the Commissioner argued

in conjunction with the ALJ's evaluation of Plaintiff's testimony that the ALJ made such

1    findings.  *See* Dkt. 27 at 10-13; *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.

2    2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof,

3    he or she may only find an applicant not credible by making specific findings as to credibility

4    and stating clear and convincing reasons for each."); *accord Treichler v. Comm'r of Soc. Sec.*

5    *Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

6           Because Dr. Shadrach's opinion was based on her own clinical observations and testing,

7    in addition to Plaintiff's self-reports, the ALJ's supportability findings here were not supported

8    by substantial evidence.  *See Allison G. v. Comm'r of Soc. Sec.*, No. C20-5839-BAT, 2021 WL

9    3661449, at *1 (W.D. Wash. Aug. 18, 2021) (same).  Moreover, the ALJ here made no explicit

10   consistency findings regarding Dr. Shadrach's opinion; therefore, remand is necessary for the

11   ALJ to reconsider the persuasiveness of Dr. Shadrach's opinion.

12                         b.    *Dr. Widlan*

13          Dr. Widlan reviewed Plaintiff's medical records and Dr. Swing's opinions, conducted a

14   clinical interview, and administered an MSE in support of his May 2019 opinion in which he

15   diagnosed Plaintiff with PTSD, major depressive disorder, depersonalization disorder, cannabis

16   use disorder, opioid use disorder, and borderline personality disorder.  AR 443. Dr. Widlan

17   opined that while Plaintiff possessed "adequate memory" and was "able to accept instruction

18   from a supervisor," she would "struggle to persist with adequate pace due to anxiety and

19   characterological dysfunction."  AR 444.  Dr. Widlan further found that Plaintiff possessed

20   "deficits in concentration and social reasoning."  AR 443-44.  He opined that Plaintiff will

21   "become easily overwhelmed by task demands, which could impact pace," and that she would

22   "likely struggle to consistently negotiate simple social stressors" and "has some deficits in ADLs

23   [activities of daily living]."  AR 444.

1      In finding that Dr. Widlan's opinion was "not fully persuasive," the ALJ found

2   persuasive the portion of Dr. Widlan's opinion concluding that Plaintiff possessed adequate

3   memory and could accept instruction from a supervisor despite her deficits in concentration and

4   social reasoning.  AR 1117.  However, the ALJ found not persuasive Dr. Widlan's opinion

5   regarding Plaintiff's persistence, pace, and overwhelm.  AR 1117.  Specifically, the ALJ found

6   that, based on Plaintiff's performance on the MSE administered by Dr. Widlan and her clinical

7   interview with Dr. Widlan, there was insufficient support for Dr. Widlan's opined limitations

8   regarding Plaintiff's concentration, social reasoning, and her ability to persist with adequate

9   pace.  AR 1117.  The ALJ additionally found that Dr. Widlan's opined limitations were

10  inconsistent with the longitudinal record, including Plaintiff's performance on numerous MSEs,

11  treatment notes, and psychiatric observations.  AR 1117 (multiple record citations).

12      Plaintiff argues that the ALJ erred in her supportability findings because her ability to

13  keep up during an MSE and clinical interview, such as that with Dr. Widlan, does not correspond

14  to a similar ability to sustain that persistence and pace on a job.  Dkt. 24 at 6; Dkt. 28 at 2.

15  Moreover, Plaintiff asserts that Dr. Widlan "clearly" accounted for Plaintiff's performance in his

16  assessments.  Plaintiff further contends that the ALJ's consistency finding was also erroneous

17  because Dr. Widlan's opinion was consistent with "the rest of the record and the opinions of the

18  other doctors who treated and examined Plaintiff for her mental impairments."  Dkt. 24 at 6.

19      The Commissioner notes the numerous record citations that the ALJ provided in support

20  of her consistency findings.  She further suggests that the ALJ was entitled to interpret the

21  evidence in the manner that she did in finding Plaintiff's treating and examining doctors'

22  opinions less persuasive, and contends that the ALJ adequately supported her findings with

23

1    relevant evidence or explanation.  Dkt. 27 at 6.  In reply, Plaintiff contends that the

2    Commissioner has cherry-picked references to normal examination findings.  Dkt. 28 at 3.

3          The Court agrees that the ALJ's supportability findings regarding Dr. Widlan's opinion

4    are not supported by substantial evidence because his opinion was based not solely on the MSE

5    that he performed, but also on his clinical interview and record review.  However, unlike Dr.

6    Shadrach, the ALJ additionally found that Dr. Widlan's opinion was inconsistent with the

7    longitudinal record.  *See* AR 1117.

8          The numerous record documents to which the ALJ cited indeed constitute substantial

9    evidence demonstrating that Dr. Widlan's opined limitations regarding Plaintiff's concentration,

10   social reasoning and pace and persistence were inconsistent with her medical records as a whole.

11   *See* AR 1117 (citing AR 442, 463-64, 583-84, 685, 354, 402, 432, 438, 458, 463, 501, 505, 595,

12   668, 676, 684, 768, 782, 789, 855, 1998-99).  While the limited April 2019-March 2020 therapy

13   records cited by Plaintiff in opposition establish that she shared feeling depressed and hopeless at

14   times with her therapist, Dr. Swing, the therapy records nevertheless fail to undermine the

15   typically minimal psychiatric findings detailed in Plaintiff's medical records from 2017-2022,

16   and relied on by the ALJ in support of her consistency findings.  *See* AR 638, 630, 632, 636,

17   628, 634 (therapy records cited by Plaintiff).

18         Under *Woods*, the ALJ's finding that Dr. Widlan's opinion is inconsistent with the

19   longitudinal record itself provides a sufficient basis for the ALJ to conclude that the opinion was

20   unpersuasive.  *See* 32 F.4th at 792-94 & n.4 (consistency and supportability constitute two

21   distinct factors that should be treated separately). Given the ALJ's consistency reasons, the Court

22   concludes that even though the ALJ erred in her supportability findings regarding Dr. Widlan's

23   opinion, the error was harmless.  *See id.; see also Joseph F. v. Kijakazi*, 2022 WL 17903079, at

1   *7 (C.D. Cal. Oct. 11, 2022) (collecting cases and holding that under *Woods*, the ALJ's failure to

2   address the supportability factor constituted harmless error where ALJ's consistency findings

3   were supported by substantial evidence).

4               c.    *Dr. Swing*

5       The record includes three opinions from Dr. Swing as discussed below.

6                   i.    2019 Opinion

7       In January 2019, treating psychologist, Dr. Swing, submitted a letter regarding Plaintiff's

8   mental health-related functioning based on her treatment of Plaintiff since September 2011, for

9   generalized anxiety disorder, major depressive disorder, and complex PTSD.  AR 404.  Dr.

10  Swing explained that Plaintiff has "substantial impairments in her activities of daily living," and

11  is unable to "get out of bed or take care of her basic needs" most days.  AR 404.  She noted that

12  Plaintiff's "anxiety typically prevents her from leaving the house," and that when employed,

13  "she has been unable to engage in consistent work without being impacted by her mental health

14  symptoms," and unable to "behave[e] and engag[e] effectively with others."  AR 404.  In sum,

15  Dr. Swing opined that Plaintiff's mental impairments "prevent her from engaging in any

16  substantial gainful activity."  AR 404.

17      The ALJ found Dr. Swing's 2019 opinion unpersuasive, concluding that Dr. Swing

18  offered an opinion on an issue reserved to Commissioner.  AR 1116.  Additionally, the ALJ

19  found the opinion was unsupported because Dr. Swing relied primarily on Plaintiff's own self-

20  reports, which the ALJ found were themselves "unsupported by the evidence."  AR 1116.

21                  ii.    2020 Mental RFC Assessment

22      In July 2020, Dr. Swing completed a check-box RFC assessment, evaluating Plaintiff's

23  functional limitations in four categories, including understanding and memory, sustained

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

1   concentration and persistence, social interaction, and adaptation.  AR 640-42.  Dr. Swing opined

2   that Plaintiff possessed multiple marked limitations in all four categories.  AR 640-42.

3        The ALJ found Dr. Swing's RFC assessment unpersuasive because Dr. Swing failed to

4   provide objective support for her RFC findings.  AR 1116.  The ALJ further found that Dr.

5   Swing's opinion was inconsistent with Plaintiff's performance on MSEs, treatment notes, and

6   psychiatric observations.  AR 1116 (multiple record citations identical to those offered in

7   rejecting Dr. Widlan's opinion).

8                          iii.    2021 Opinion

9        Subsequently, in January 2021, Dr. Swing completed a comprehensive psychological

10  evaluation based on her nine years treating Plaintiff, a clinical interview, and numerous in-person

11  tests and assessments in addition to online testing.  AR 1491-1592.  Dr. Swing diagnosed

12  Plaintiff with PTSD, severe persistent depressive disorder, ADHD, and unspecified

13  neurocognitive disorder, and opined that the neurocognitive and psychological testing suggest

14  that Plaintiff's "emotional difficulties" "exacerbate her cognitive difficulties," and cause "a

15  complicated constellation of symptoms and difficulties."  AR 1524, 1526, 1562.  Dr. Swing

16  opined that Plaintiff's mental impairments "significantly impair[]" her "ability to interact

17  socially and adapt to outside environments or unfamiliar places."  AR 1528.  Dr. Swing further

18  opined that if Plaintiff were able to receive support to treat her physical impairments, "as well as

19  continue counseling and medication management to stabilize other symptoms," it is "possible"

20  that she may be able to work on a part-time basis.  AR 1528.  However, Dr. Swing ultimately

21  opined that it is "unlikely" that Plaintiff would achieve the "ability to be gainfully employed or

22  [to] return to a previous level of functioning."  AR 1528.

23

1    Similar to Dr. Swing's 2019 opinion, the ALJ found that Dr. Swing's 2021 opinion was

2  "not very persuasive," suggesting that the opinion was unsupported based on the possibility that

3  Plaintiff's performance on certain tests was exaggerated and that some of her responses on the

4  tests gave reason for concern or were invalid.  AR 1119.  The ALJ therefore found Dr. Swing's

5  reliance on the test results "problematic."  AR 1119.  The ALJ further found that Dr. Swing

6  "provide[d] little information regarding specific work-related impairments" and that the report,

7  while lengthy, "shed[] little light on [Plaintiff's] actual ability to function in a work setting."  AR

8  1119.

9              iv.    <u>Analysis</u>

10   Although Dr. Swing provided three separate opinions in 2019, 2020, and 2021, and the

11  ALJ offered separate findings regarding each of the opinions, Plaintiff combined her arguments

12  regarding the three opinions.  Dkt. 24 at 10.

13    First, Plaintiff suggests that the ALJ erred in her supportability findings regarding all

14  three of Dr. Swing's opinions.  She contends that the ALJ erred in concluding at step two that

15  there was sufficient evidence that she possessed severe mental impairments, but then rejected the

16  limitations from Plaintiff's doctors.  Dkt. 24 at 10.  Plaintiff also asserts that Dr. Swing's

17  opinions should have been deemed more supportable based on her extensive treating relationship

18  with Plaintiff and the fact that she conducted the most extensive testing of any psychologist in

19  the record.  Dkt. 24 at 10.

20   The Commissioner responds that Dr. Swing did not provide objective medical evidence

21  to support her 2019 and 2020 opinions, and further notes that the ALJ's determination that Dr.

22  Swing's 2019 and 2021 opinions were not supported because the test results and Plaintiff's self-

23  supporting were unreliable.  Dkt. 27 at 9.  In reply, Plaintiff makes the same argument that she

ORDER REVERSING THE COMMISSIONER'S
DECISION - 13

did regarding Dr. Shadrach's opinion, asserting that it is "well-established that mental health professionals" like Dr. Swing "*must* rely on the combination of their [own] observations and reported symptoms." Dkt. 28 at 3.

Second, in an argument that pertains solely to the reason the ALJ offered for rejecting Dr. Swing's 2020 RFC assessment, Plaintiff contends that the ALJ's consistency findings regarding Dr. Swing's 2020 assessment were erroneous because her performance on MSEs throughout the record did not undermine her ability to sustain attention and concentration since a ninety-minute MSE cannot be compared to an eight-hour workday or forty hour workweek. Dkt. 28 at 3. She further asserts that her treatment notes indeed "show many abnormalities, including crying spells, hopelessness, constant thoughts about dying and suicide, conflicts with family and friends, deficits in executive functioning, feelings of worthlessness, struggles with physical pain, mood swings, erratic reactions to medications, and fatigue." Dkt. 28 at 3 (citing AR 628-39). The Commissioner counters that the treatment notes cited by Plaintiff do not themselves demonstrate any abnormalities, and that the existence of a severe mental impairment does not *per se* establish functional limitations. Dkt. 27 at 9-10.

At the outset, the Court notes that the ALJ's finding of a severe impairment at step two of the sequential analysis does not in and of itself establish particular limitations, as Plaintiff suggests. *See* 20 C.F.R. § 404.1545(a). Instead, the requisite limitations will depend on the particular medical evidence in the individual case. Thus, the ALJ's finding here that Plaintiff's depression and personality disorder were severe at step two did not also mandate that the ALJ subsequently accept all of the limitations proffered by Plaintiff's treating and examining psychologists.

1    Nor did Dr. Swing's treating status require that the ALJ find Dr. Swing's opinions more

2    persuasive.  20 C.F.R. § 416.920c(a).  The 2017 Rule Revisions "displace[d] [the Ninth Circuit's]

3    longstanding case law" interpreting the prior regulations to require that ALJs typically give

4    special preference to treating and examining physicians' opinions.  *See Woods* 32 F.4th at 787,

5    791.  Instead, the ALJ need only consider the relative treating status of physicians when two or

6    more distinct medical opinions are equally supported and consistent.  *See* 20 C.F.R. §§

7    404.1520c(b)(3), 416.920c(b)(3); *see also Woods*, 32 F.4th at 792 (discussing 20 C.F.R. §

8    404.1520c(b)(3)) ("In that case, the ALJ 'will articulate how [the agency] considered the other

9    most persuasive factors.'").  Here, the ALJ did not find Dr. Swing's opinions to be as well-

10   supported and consistent with the record as Dr. Gollogly's opinion; thus, the ALJ was not

11   required to consider Dr. Swing's treatment relationship.[5]  *See id.*

12   The Court agrees that the ALJ erred in her supportability findings regarding Dr. Swing's

13   2019 and 2021 opinions for the same reasons set forth above regarding Dr. Shadrach's opinion.

14   Moreover, the ALJ further erred in her supportability findings regarding Dr. Swing's 2021

15   opinion because Dr. Swing acknowledged and incorporated any concerns she possessed

16   regarding Plaintiff's performance on the tests into her ultimate opinion, thus accounting for any

17   exaggerated responses in the opinion.  Given the ALJ's failure to offer explicit consistency

18   findings regarding either Dr. Swing's 2019 opinion or her 2021 opinion, remand is required for

19   the ALJ to reconsider the persuasiveness of Dr. Swing's 2019 and 2021 opinions.[6]

20   _____

21   [5] The Court further notes that Dr. Swing did not conduct her extensive psychological testing until 2021 –
     after she issued her 2019 and 2020 opinions. Thus, Dr. Swing's 2019 and 2020 opinions were not based

22   on those tests.

23   [6] The Court agrees with the ALJ and the Commissioner that Dr. Swing's assessment in her 2019 opinion
     regarding Plaintiff's ultimate ability to work constitutes an opinion on an issue reserved to the
     Commissioner.  *See* 20 C.F.R. § 404.1520b(c)(3)(i) (noting that a statement that a claimant is or is "not

The same, however, is not the case with Dr. Swing's 2020 mental RFC assessment.  AR 640-42.  There, Dr. Swing indeed failed to offer any narrative responses or explanation for any of her check-box assessments, and, given that Dr. Swing had not yet conducted her own clinical testing at the time the 2020 assessment was completed, it was reasonable for the ALJ to find that the 2020 assessment was not adequately supported.  Moreover, for the same reasons detailed above regarding the ALJ's consistency findings as to Dr. Widlan's opinion, the ALJ's identical consistency findings regarding Dr. Swing's 2020 opinion were similarly supported by substantial evidence.  *See* AR 1116 (AR 442, 463-64, 583-84, 685, 354, 402, 432, 438, 458, 463, 501, 505, 595, 668, 676, 684, 768, 782, 789, 855, 1998-99).

In sum, the ALJ's evaluation of Dr. Widlan's and Dr. Swing's 2020 opinions is affirmed.  However, because the ALJ's supportability reasons fail with respect to Dr. Shadrach's opinion and the 2019 and 2021 opinions from Dr. Swing – opinions for which the ALJ offered no specific consistency findings – the Court reverses and remands to the ALJ to reconsider the persuasiveness of Dr. Shadrach's opinion and Dr. Swing's 2019 and 2021 opinions.

### 2.   Medical Opinions Regarding Plaintiff's Physical Impairments

Plaintiff challenges the ALJ's evaluation of Dr. Deem's opinion.  Dr. Deem interviewed and examined Plaintiff in conjunction with her February 2020 opinion, but acknowledged that that she did not review any records.  AR 589.  Dr. Deem observed that "when [Plaintiff] walked in," she had "no arm swing," and "her speed was very slow."  AR 590.  Her examination, however, revealed that Plaintiff's strength, range of motion, grip, and reflexes were all within normal limits.  AR 590-91.  The only observed abnormality was "some pain" in Plaintiff's right

---

disabled, blind, able to work, or able to perform regular or continuing work" is "neither valuable nor persuasive").  However, Dr. Swing also included additional statements regarding Plaintiff's functional limitations in the 2019 opinion that are not on the ultimate issue.  *See* AR 404.

1    sacroiliac joint when she performed a straight leg raising test.  AR 591.  Dr. Deem diagnosed

2    EDS, sciatic pain on the right sight, and lumbar L4-5 nerve impingement.  Dr. Deem opined that

3    Plaintiff possessed both postural and manipulative limitations, and found that Plaintiff was

4    limited to occasional climbing of stairs, balancing, stooping, crouching, crawling, reaching

5    overhead and forward, handling, fingering, and feeling.  AR 592.

6         The ALJ rejected Dr. Deem's opinion regarding the postural and manipulative

7    limitations, except to agree with Dr. Deem that Plaintiff could only occasionally push and/or pull

8    with her left lower extremity and that she could never climb ladders, ropes, or scaffolds.  AR

9    1107, 1114-15.  In rejecting Dr. Deem's opined limitations, the ALJ found that they were not

10   supported by Dr. Deem's physical examination, and that the bases for Dr. Deem's limitations

11   were unclear and did not "appear to be objectively supported."  AR 1114.  The ALJ further

12   found that Dr. Deem's limitations were not consistent with the record as a whole, which the ALJ

13   found "showe[ed] inconsistent treatment for [Plaintiff's] physical complaints, generally good

14   response to treatment, a fairly normal range of daily activities, and few significant findings on

15   examination."  AR 1115.  In particular, the ALJ found that Plaintiff was "typically noted to have

16   a normal gait, normal range of motion, normal strength," and to be "in no acute or apparent

17   distress."  AR 1115 (numerous record citations).

18        Plaintiff contends that the ALJ erred in rejecting Dr. Deem's postural and manipulative

19   limitations, focusing primarily on the reaching and fingering limitations opined to by Dr. Deem.

20   Dkt. 24 at 4.  Plaintiff argues that having found that her EDS constituted a severe impairment,

21   the ALJ erred in rejecting the limitations that Dr. Deem "attributed to this impairment based on

22   an alleged lack of significant abnormalities on examination."  Dkt. 24 at 5.  In support, Plaintiff

23   asserts that the very nature of EDS is joint instability.  Dkt. 28 at 2.  Plaintiff additionally

1   contends that record examination findings indeed documented Plaintiff's "reduced muscle

2   strength" and "hypermobility and hyperextension of . . . [her] thumbs, elbows, and ankles" in

3   support of and consistent with Dr. Deems' opinion.  Dkt. 28 at 2 (citing AR 506, 552-53, 555,

4   559, 561, 564-65, 568-69, 571-72, 575-76, 596, 822).  Finally, Plaintiff argues that her ADLs did

5   not provide adequate support for the ALJ's discounting of Dr. Deem's opinion because Plaintiff

6   described performing them "in short bursts with many breaks to rest," which was consistent with

7   the limitations to which Dr. Deem opined.  Dkt. 24 at 5 (citing AR 286-89).

8          The Commissioner counters that the ALJ reasonably found that Dr. Deem's opinion was

9   unsupported given that Dr. Deem did not herself document any joint instability in her

10  examination and also did not review any records at all – including those that demonstrated that

11  Plaintiff suffered from joint instability.  *See, e.g.,* AR 506.  The Commissioner argues that

12  Plaintiff's own reports of joint instability were an insufficient basis for Dr. Deem's opinion, and

13  that Dr. Deem's opined limitations were thus not supported by her own examination.  Dkt. 27 at

14  4.  As for the ALJ's consistency findings, the Commissioner asserts that none of the records cited

15  by the ALJ or in opposition by Plaintiff support any manipulative limitations.

16         The Commissioner is correct that Dr. Deem did not record any findings of joint

17  instability in conjunction with her own physical examination of Plaintiff, which itself exclusively

18  produced nearly all normal findings.  AR 591.  Nor did Dr. Deem review any of Plaintiff's

19  medical records – including those that documented joint instability.  However, as Plaintiff notes,

20  Dr. Deem diagnosed EDS and referenced Plaintiff's joint instability in opining regarding her

21  maximum lifting and carrying capacity.  AR 591.  While the source of Dr. Deem's joint

22  instability finding  is unclear given that Dr. Deem did not herself review any medical records, it

23  would appear that Dr. Deem relied on Plaintiff's self-report and/or the nature of an EDS

diagnosis.  Because there is no dispute that Plaintiff was diagnosed with EDS and that her

medical records on occasion referenced her joint stability, the Court finds that Dr. Deem's

reference to joint instability was not unsupported in connection with her opinion regarding

Plaintiff's lifting and carrying restrictions.

However, in addition to the lifting and carrying restriction, Dr. Deem also limited

Plaintiff's postural and manipulative activities, but, unlike the lifting and carrying restriction, Dr.

Deem provided no corresponding explanation for the postural and manipulative restrictions.  *See*

AR 592.  Additionally, as noted by the ALJ, the bases for those limitations were unclear from

Dr. Deem's opinion, and were not supported by her examination, which, in fact, found that

Plaintiff's

> [r]ange of motion of her neck, back, hips, knees, ankles, shoulders, elbows,
> forearms, wrists, and thumbs were all within normal limits. Straight leg raising was
> to [ninety] degrees supine and [twenty-five] degrees sitting.  She had 5/5 strength in
> her upper and lower extremities and in grip strength.  She had normal bulk and tone
> throughout and no evidence atrophy.  Sensation was grossly intact to light touch and
> pinprick throughout her upper and lower extremities.  Deep tendon reflexes were 1+
> in both upper and lower extremities.

AR 1114.  Thus, the ALJ's determination that Dr. Deem's opined postural and manipulative

limitations were unsupported was itself supported by substantial evidence.[7]

Additionally, the ALJ's finding that Dr. Deem's opined limitations were inconsistent

with the longitudinal record was also supported by substantial evidence.  *See* AR 1115 (citing

596, 916, 352, 354, 432, 438, 457, 501, 5050, 529, 595, 600, 604, 668, 676, 684, 768, 774, 782,

853, 880, 953, 1625, 1662, 1758, 578, 1711, 2174, 2925).  While medical records confirm

Plaintiff's hypermobility, they also show that the vast majority of her physical examinations

revealed normal findings, with no evidence of joint deformity or signs of more serious EDS.  *See*

---

[7] The Court declines Plaintiff's invitation to manufacture reasons in support of Dr. Deem's opined
limitations.

1    AR 596 (Dr. Greenfield notes hypermobility, but finds that Plaintiff does not "exhibit signs or

2    symptoms of vascular EDS"); *see also* AR 853 (Dr. Welch notes in 2020 that there is "no

3    evidence of joint deformity" and that Plaintiff's "full range of motion to all major joints [is]

4    intact").   Moreover, as the Commissioner accurately notes, and contrary to Plaintiff's assertion

5    otherwise, the existence of an impairment at step two of the sequential analysis does not itself

6    establish particular limitations.   *See* 20 C.F.R. § 404.1545(a).   The requisite limitations will

7    depend on the particular medical evidence in the individual case.

8           Here, none of the cited records, including those relied on by Plaintiff, required the

9    additional limitations opined to by Dr. Deem and rejected by the ALJ.   Plaintiff's own cited

10   records consist almost exclusively of notes related to the physical therapy she received following

11   her August 2019 EDS diagnosis during a very limited two-month period in September and

12   October 2019, and prior to her discharge from physical therapy for non-compliance in November

13   2019.   *See* AR 506, 552-53, 555, 559, 561, 564-65, 568, 573, 575, 579, 822.   Many of those

14   records themselves reveal progress in terms of Plaintiff's pain related to her physical

15   impairments, and, other than to demonstrate the fact of hypermobility, the records do not support

16   Dr. Deem's opinion.   *See* AR 552 (Plaintiff reports relief in September 2019 after one session);

17   AR 561, 573, 575-76.   Accordingly, the Court finds that the ALJ's consistency findings as to Dr.

18   Deem's opinion were also supported by substantial evidence.[8]

19

20

21

22   [8] This is the case even if, as Plaintiff asserts, the ALJ erred in her related finding that Dr. Deem's opinion
     was inconsistent with Plaintiff's "fairly normal range of daily activities."   AR 1114.   The ALJ's other
     findings on the consistency factor – including Plaintiff's "generally good response to treatment," and
23   findings that Plaintiff "typically . . . ha[d] a normal gait, normal range of motion, normal strength, and
     [was] in no acute or apparent distress" were all supported by substantial evidence for the reasons stated
     above and are alone sufficient to uphold the ALJ's consistency findings.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 20

1    **B.     The ALJ Did Not Err in Evaluating Plaintiff's Testimony.**

2         **1.     Testimony Regarding Plaintiff's Mental Impairments**

3         Plaintiff testified at the June 2022 hearing that she was living with her father and that she

4    continued to receive treatment for her mental health, including psychiatric medications.  AR

5    1141-42.  She asserted that she suffers from depression, PTSD, panic attacks, and agoraphobia,

6    and explained that she has "very little hope for [her] future" and noted that she primarily leaves

7    the house only for medical appointments or to go to the pharmacy.  AR 1143.  According to

8    Plaintiff, as long as she is not "triggered," she suffers from panic attacks approximately once per

9    month, during which she cries and "get[s] upset."  AR 1144.

10        The ALJ found at step two that Plaintiff's personality disorder and major depressive

11   disorder constituted severe impairments, and that Plaintiff presented objective medical evidence

12   establishing that her medically determinable impairments could cause the symptoms alleged, and

13   no affirmative evidence of malingering.[9]  Tr. 19, 23.  The ALJ was therefore required to provide

14   "specific, clear and convincing reasons" for rejecting Plaintiff's testimony concerning the

15   intensity, persistence, and limiting effects of her symptoms.  *Tommasetti*, 533 F.3d 1035, 1039

16   (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v.*

17   *Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard

18   continues to apply).

19        The ALJ discounted Plaintiff's testimony regarding the intensity, persistence, and

20   limiting effects of her mental impairments as "not consistent with the medical evidence and other

21   evidence in the record."  Tr. 23.  The ALJ offered three reasons for discounting Plaintiff's

22

23   _____

[9] By contrast, the ALJ found at step two that there was insufficient evidence in the record to establish that Plaintiff's alleged anxiety disorder and PTSD constituted medically determinable impairments.  1105. Plaintiff has not challenged the ALJ's step two findings.  *See* Dkt. 24.

testimony regarding "extremely limiting mental health symptoms," finding that it was: (1) inconsistent with the longitudinal record, including her performance on MSEs, treatment notes, and psychiatric observations, citing to the same record evidence that the ALJ proffered in discounting Dr. Widlan's medical opinion; (2) inconsistent with Plaintiff's other statements regarding her daily activities; and (3) that treating records indicated that Plaintiff's therapy and medication have resulted in some improvement. AR 1112-13.

As she did with the medical opinions, Plaintiff points to records from her psychologist, Dr. Swing, in challenging the ALJ's finding that her testimony was inconsistent with the longitudinal record. Dkt. 24 at 13 (citing AR 628-39). However, again, as discussed above, the numerous record documents to which the ALJ cited indeed constitute clear and convincing reasons for discounting Plaintiff's testimony regarding the extent of her limitations related to her mental impairments. *See* AR 1112 (citing AR 442, 463-64, 583-84, 685, 354, 402, 432, 438, 458, 463, 501, 505, 595, 668, 676, 684, 768, 782, 789, 855, 1998-99). The limited therapy records cited by Plaintiff fail do not diminish the typically minimal psychiatric findings detailed in Plaintiff's medical records from 2017-2022 and relied on by the ALJ in support of her consistency findings. *See* AR 638, 630, 632, 636, 628, 634 (therapy records cited by Plaintiff). Moreover, the ALJ offered an additional unchallenged, valid reason for discounting Plaintiff's testimony: evidence that Plaintiff's therapy and medication have resulted in improvement in her mental health symptoms. AR 1113 (citing AR 1929-1944). Even if the ALJ erred in her description of or utilization of Plaintiff's ADLs, either of these two reasons alone constituted substantial evidence for discounting Plaintiff's testimony regarding her mental impairments.

## 2.    Testimony Regarding Plaintiff's Physical Impairments

At the June 2022 hearing, Plaintiff testified that standing and lifting pans causes her pain,

and, as a result, she prepares frozen meals or protein shakes for herself.  AR 1144.  She stated

that her father, with whom she lives, typically prepares dinner for her several times per week.

AR 1144.  She is able to vacuum her room with a lightweight vacuum and cleans her bathroom a

little at a time.  AR 1144-45.  Plaintiff's father drives her around and cares for her car.  AR 1145.

She testified that hot baths and showers make her heart rate climb, and that she no longer enjoys

putting on make-up or doing her hair because they are both painful.  AR 1145.

Plaintiff explained that her physical impairments make her feel like she has thrown out

her back or her neck, and that she also experiences symptoms including a high heart rate,

dizziness, nausea, and migraines.  AR 1145-46.  As for her EDS, Plaintiff described pain in her

joints, muscles, and ligaments, along with a feeling like her "shoulders could pop out of socket."

AR 1146.  Her POTS causes a high heart rate, temperature sensitivity, drenching sweat,

dizziness, and migraines.  AR 1147.  Plaintiff, however, is unable to take the recommended

medication for POTS because she suffers from asthma, and the medication is contraindicated.

AR 1147.  As a result, she instead had a port placed and receives daily infusions at home.  AR

1147.

In terms of functional limitations, Plaintiff explained that she has a difficult time lifting

items because it hurts her hands, wrists, shoulders, and back.  AR 1150.  She stated that she is

not comfortable lifting more than five pounds.  AR 1150.  Plaintiff also stated that she is unable

to walk any distance because she is left "completely fatigued and depleted."  AR 1150.  Her EDS

affects all of her joints, including her finger joints, and causes fatigue in her hands.  AR 1150-51.

In discounting Plaintiff's testimony regarding the intensity, persistence, and limiting

effects of the symptoms associated with her physical impairments, the ALJ found that Plaintiff's

statements were inconsistent with other evidence in the longitudinal record, including medical

1   records documenting "generally unremarkable constitutional findings and examinations" and an

2   absence of "acute distress or visible discomfort," minimal and mild physical examinations

3   findings, and objective tests and imaging that failed to show "any significant abnormality."  AR

4   1110 (citing AR 596, 916, 352, 354, 432, 438, 457, 501, 5050, 529, 595, 600, 604, 668, 676, 684,

5   768, 774, 782, 853, 880, 953, 1625, 1662, 1758, 578, 1711, 2174, 2925, 1456-57, 1442, 1443,

6   1440, 1611, 1614).  The ALJ further found that the record indicated that Plaintiff's physical

7   impairment symptoms improved with treatment.  AR 1110-11 (citing AR 578-89, 1711, 2174,

8   2925).

9        In arguing that the ALJ erred in rejecting her testimony, Plaintiff asserts that "the ALJ

10   has taken some of [her] moments of better functioning out of context in an attempt to discredit

11   her testimony," thus suggesting that the ALJ has cherry-picked medical records.  Dkt. 24 at 12.

12   She further contends that the ALJ failed to identify how the medical evidence is inconsistent

13   with her specific testimony.  Dkt. 24 at 13.

14        As discussed above with Dr. Deem's opinion, the ALJ's finding that the longitudinal

15   record was inconsistent with Plaintiff's testimony was supported by the medical records cited

16   both by the ALJ and by Plaintiff.  Those records undermine Plaintiff's testimony regarding the

17   constant and acutely debilitating pain that she alleges to have suffered, and provide clear and

18   convincing evidence in support of the ALJ's rejection of Plaintiff's testimony regarding her

19   physical impairments.  Moreover, the Court notes that the ALJ also provided two additional

20   unchallenged reasons in support of her evaluation of Plaintiff's testimony:  evidence of

21   improvement and objective testing and imaging that revealed largely normal findings.  Any of

22   the three reasons alone constitute an adequately clear and convincing reason to support the ALJ's

23   related findings.

1   For all of these reasons, the ALJ did not err in her assessment of Plaintiff's mental and/or

2   physical impairment testimony.

3   **C.   The ALJ Did Not Err in Evaluating the Lay Testimony.**

4   In January 2019, Plaintiff's friend and former roommate, G.S., submitted a third party

5   function report on Plaintiff's behalf.  AR 278.  G.S. stated that she had known Plaintiff for four

6   years and spent every day with Plaintiff during that time.  AR 278.  G.S. stated that Plaintiff

7   prepared her own meals daily, and that she was able to complete her personal care, clean, do

8   laundry, and do dishes without any help.  AR 279-80.  G.S. noted that Plaintiff went out several

9   times per week, and that she was able to drive, shop, pay bills, and handle her finances

10  independently.  AR 281-82.

11  In addition, G.S. stated that Plaintiff suffered from social anxiety and had "trouble

12  concentrating, following [verbal] instructions, recalling information, and being in social

13  environments."  AR 283.  G.S. noted that Plaintiff did not handle stress or authority figures well,

14  that she had in the past "been triggered by insensitive managers and blamed for her disability,"

15  and was "terrified of judgment, anger, confrontation, correction, and learning."  AR 284.  G.S.

16  summarized that Plaintiff's disability "is profound and detrimental to her ability to live a full and

17  happy life."  AR 285.

18  The ALJ acknowledged and agreed with G.S.'s testimony that Plaintiff "is limited from

19  both a physical and mental standpoint" but discounted G.S.'s full description of Plaintiff's

20  limitations as not supported by the record.  AR 1119.  Plaintiff argues that the ALJ erred in

21  failing to provide germane reasons in support of her rejection of G.S.'s testimony.  The

22  Commissioner suggests that germane reasons are no longer required, but nevertheless contends

23  that the ALJ's reasoning was sufficient under any standard.

1    For cases filed after March 27, 2017, such as this one, an ALJ is "not required to

2  articulate" how he or she evaluated evidence from non-medical sources such as educational

3  personnel, public and private social welfare agency personnel, and other lay witnesses.  20

4  C.F.R. § 404.1502(e).  Nevertheless, the Ninth Circuit has suggested that its pre-2017 standard

5  requiring "germane" reasons to reject lay witness testimony applies to an ALJ's evaluation of lay

6  witness testimony post-2017.  *See Muntz v. Kijakazi*, 2022 WL 17484332, at *2 (9th Cir. Dec. 7,

7  2022) (applying "germane reasons" standard to ALJ's evaluation of third-party function report

8  from claimant's husband); *Weitman v. Kijakazi*, 2022 WL 17175060, at *4 n.4 (9th Cir. Nov. 23,

9  2022); *but see Fryer v. Kijakazi,* No. 21-36004, 2022 WL 17958630, at *3 (9th Cir. Dec. 27,

10  2022) (noting that "[i]t is an open question whether ALJs are still required to consider lay

11  witness evidence under the revised regulations, although it is clear they are no longer required to

12  articulate it in their decisions").

13    Here, regardless of the standard, G.S.'s statement describes the same physical and mental

14  limitations to which Plaintiff testified, and, for the reasons above, Plaintiff has not shown that the

15  ALJ erred in discounting her testimony.  Accordingly, the ALJ also provided adequate reasons

16  for discounting G.S.'s testimony.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685,

17  694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the

18  claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to

19  such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay

20  witness's] testimony"); *Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (9th Cir. Sep. 1, 2022)

21  (finding harmless error in ALJ's failure to address lay statements where the lay statements were

22  similar to plaintiff's properly rejected testimony in a case applying the 2017 regulations).

23

1

**D.     Remedy**

2          Plaintiff requests remand for an award of benefits based on the ALJ's alleged errors.

3    Dkt. 24 at 16-17.

4          Remand for an award of benefits "is a rare and prophylactic exception to the well-

5    established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).  The

6    Ninth Circuit has established a three-step framework for deciding whether a case may be

7    remanded for an award of benefits.  *Id.* at 1045.  First, the Court must determine whether the ALJ

8    has failed to provide legally sufficient reasons for rejecting evidence.  *Id.* (citing *Garrison v.*

9    *Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).  Second, the Court must determine "whether the

10   record has been fully developed, whether there are outstanding issues that must be resolved

11   before a determination of disability can be made, and whether further administrative proceedings

12   would be useful."  *Treichler*, 775 F.3d at 1101.  Only if the first two steps were satisfied would

13   the Court consider whether, "if the improperly discredited evidence were credited as true, the

14   ALJ would be required to find the claimant disabled on remand."  *Garrison*, 759 F.3d at 1020.

15   "Even if [the Court] reach[es] the third step and credits [the improperly discredited evidence] as

16   true, it is within the court's discretion either to make a direct award of benefits or to remand for

17   further proceedings."  *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

18          Here, the Court has concluded that the ALJ's evaluation of Dr. Widlan's and Dr. Deem's

19   medical opinions, Dr. Swing's 2020 medical opinion, Plaintiff's testimony, and the lay witness

20   testimony was supported by substantial evidence and free from error.  The lone errors pertain

21   solely to the ALJ's supportability findings regarding Drs. Shadrach's opinion and Dr. Swing's

22   2019 and 2021 opinions, and the ALJ's related failure to make specific consistency findings

23

regarding those opinions. Therefore, outstanding issues remain that the ALJ must resolve, and remand for further administrative proceedings is the appropriate remedy.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reconsider the persuasiveness of Drs. Shadrach's opinion and Dr. Swing's 2019 and 2021 opinions and articulate adequate supportability and consistency findings.

Dated this 3rd day of August, 2023.


S. KATE VAUGHAN
United States Magistrate Judge